UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/30/2021
```

-------------------------------------------------------------------X
                                   :

MIANKANZE BAMBA,                      :

                Plaintiff,        :

                                     :                  19-cv-8646 (LJL)

     -v-                         :

                                     :             OPINION AND ORDER

U.S. DEPARTMENT OF HOMELAND SECURITY-  :
FPS, ALEJANDRO MAYORKAS, Secretary of the  :
Department of Homeland Security,         :

                                     :

              Defendants.     :

                                     :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to

dismiss Plaintiff's second amended complaint.  Dkt. No. 29.  By Report and Recommendation

dated August 13, 2021, Magistrate Judge Freeman recommended that the Court grant

Defendants' motion and dismiss Plaintiff's claims, but afford Plaintiff the opportunity to replead

some claims.  Dkt. No. 45.

      For the following reasons, the Court partially adopts Magistrate Judge Freeman's Report

and Recommendation, and grants Defendants' motion in part and denies it in part.

## BACKGROUND

      Plaintiff Miankanze Bamba ("Plaintiff" or "Bamba") was, at all times material to this

action, an employee of the United States Department of Homeland Security ("DHS").  Plaintiff is

a Black man from Africa.  Dkt. No. 28 ("SAC") ¶ 2.  He was employed by DHS as a "Regional

Financial Manager" and his duties included "assuring the integrity of DHS's financial

accounting, reporting[,] and internal controls related to DHS's revenue management system."  *Id.*

¶¶ 13, 14.  He brings this action pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e ("Title VII"), the New York State Human Rights Law, N.Y. Exec

Law § 290 (the "NYSHRL"), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 (the

"FTCA").

## I.     Plaintiff's Allegations

Plaintiff's second amended complaint makes three allegations.  First, Plaintiff complains

that Defendants created a hostile work environment for Plaintiff on the basis of his national

origin and race, in violation of Title VII and the NYSHRL.  Plaintiff's allegations primarily

focus on the alleged conduct on March 5, 2018 of James Ward ("Ward"), a "[w]hite male and

employee of Defendant DHS."  SAC ¶ 15.  On that date, after Plaintiff denied Ward's repeated

requests for funding, both orally and by email, Ward became "infuriated" and "began screaming

at Plaintiff" and "attempted to unlock his firearm from his holster," causing Plaintiff to fear for

"his safety and his life."  *Id.* ¶¶ 22-23.  Plaintiff immediately called 911, *id.* ¶ 26, but "Ward then

pushed Plaintiff into his chair, spun him around and grabbed Plaintiff's office phone, attempting

to restrict Plaintiff's ability to move freely and seek emergency assistance," and "stood in front

of Plaintiff with one hand on his firearm and the other hand on [] Plaintiff's telephone," *id.* ¶ 28.

Ward demanded Plaintiff get up and turn in his "Personal Identification Validation [] card and

shut down his computer," but Plaintiff refused.  *Id.* ¶ 29-30.  Plaintiff alleges that Jason Martinez

("Martinez"), a Hispanic male and the "Director of Operations at DHS-FPS with supervisory

authority over Ward and [] Plaintiff" was present for the altercation but did nothing to

"intervene, redirect, prevent, deescalate, or thwart the belligerent conduct of Ward."  *Id.* ¶¶ 31-

32, 34.  Plaintiff alleges that, "shortly before law enforcement arrived at the scene," Ward

abruptly left Plaintiff's office.  *Id.* ¶ 36.

Plaintiff also alleges that, going back as far as 2016, he had repeatedly "complained and

reported to DHS management that Ward consistently disrespected him[] by sending

inappropriate emails and engaging in hostile harassing behaviors." *Id.* ¶ 37. "DHS took no action to address Plaintiff's complaints prior to March 5, 2018," and "DHS and Defendant Martinez's actions and/or inactions were consistent with and/or incentivized the hostile treatment the Plaintiff suffered at the hands of his white colleague, creating a hostile work environment for the Plaintiff." *Id.* ¶¶ 38-39. Plaintiff claims that "[t]he actions of Ward, and the actions and/or inactions of DHS and Defendant Martinez, were discriminatory practices based on [Plaintiff's] race and national origin." *Id.* ¶ 40.

Second, Plaintiff alleges that, for discriminatory reasons related to his sex and race, he was not selected for another position within DHS for which he applied, in violation of Title VII and the NYSHRL. Plaintiff describes that on April 25, 2018, DHS "posted a job announcement for a Supervisory Program Manager Mission Support position" (hereinafter, the "Position"). *Id.* ¶ 41. Plaintiff was "well qualified" for the Position and he applied for it on or about May 1, 2018 and on September 13, 2018 after it was "cancelled" and then re-posted. *Id.* ¶¶ 42-45. Plaintiff alleges that the "listed closing date for the position was March 1, 2019" and that, on February 10, 2019, "DHS, by and through Defendant Martinez, informed DHS-FPS staff, and Plaintiff, that Yin Ping [("Ping")] was selected for the position." *Id.* ¶ 46-47. Ping is an Asian woman, she was selected for the Position "while the job announcement was still open and while interviews had not been conducted," and she was "far less qualified" for the Position than Plaintiff was. *Id.* ¶¶ 48-50. Plaintiff claims that hiring Ping "was consistent with hostile discriminatory practices undertaken by" DHS against him. *Id.* ¶ 52.

Third, Plaintiff alleges that the pattern of behavior described above from Ward, Martinez, and DHS establishes that Defendants were negligent in failing to provide Plaintiff with a safe working environment, in violation of the FTCA.

## II.    Plaintiff's EEO Activity

On March 8, 2018, Plaintiff initiated contact with an EEO Counselor regarding the March 5, 2018 incident.  *Id.* ¶ 8.  On April 18, 2018, Plaintiff filed a formal complaint of discrimination based on a hostile work environment due to his race and national origin relating to the incident with Ward.  Dkt. No. 31-1.  Before Plaintiff's requested hearing with an Equal Employment Opportunity Commission ("EEOC") administrative judge occurred, Plaintiff filed the instant court action on September 17, 2019.  Dkt. No. 1.  As a result, on November 25, 2019, the administrative judge issued an order of dismissal pursuant to 29 C.F.R. §§ 1614.107(a)(3), 1614.109(b), which the DHS Office for Civil Rights and Civil Liberties ("DHS CRCL") implemented on January 2, 2020.  Dkt. Nos. 31-2, 31-3.

On February 7, 2019, Plaintiff initiated counseling regarding his December 6, 2018 non-selection for the Position, which he alleged was due to discrimination based on his sex and race. Dkt. Nos. 31-4 at 2, 31-5 at 1; Dkt. No. 28 ¶ 9.  On March 25, 2019, Plaintiff filed a formal complaint.  Dkt. No. 31-4.  On June 12, 2019, DHS CRCL issued a procedural dismissal due to Plaintiff's failure to timely initiate counseling within the 45-day window, finding that by December 6, 2018, Plaintiff had the requisite knowledge of all the necessary facts to file a complaint.  Dkt. Nos. 31-5, 31-4 (Plaintiff stating in formal EEO complaint that he learned on December 6, 2018 of Ping's selection).

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint in this action against the Defendants on September 17, 2019.  Dkt. No. 1.  Plaintiff filed an amended complaint on January 14, 2020.  Dkt. No. 7.  On February 3, 2021, Plaintiff filed a second amended complaint.  Dkt. No. 28.  Defendants filed their motion to dismiss on February 26, 2021, along with a memorandum of law in support and two declarations from DHS employees involved in the reporting process of the complaints.  Dkt.

Nos. 29-32.  Defendants argue that Plaintiff's claims should be dismissed because Plaintiff fails

to sufficiently state a claim of a hostile work environment based on his membership in a

protected class, Plaintiff failed to exhaust his administrative remedies for the claims by initiating

contact with an EEO Counselor within 45 days of the matter alleged to be discriminatory, and his

New York state law claims are preempted by federal law.  On March 12, 2021, Plaintiff filed an

opposition to Defendants' motion.  Dkt. No. 34.  Defendants filed a reply on March 26, 2021.

Dkt. No. 37.

On August 13, 2021, Magistrate Judge Freeman filed a report and recommendation on

Defendants' motion to dismiss.  Dkt. No. 45.  Judge Freeman recommended Defendants' motion

to dismiss be granted in its entirety, but Plaintiff be afforded the opportunity to replead some

claims.  Plaintiff filed an objection to Judge Freeman's report and recommendation on August

27, 2021, objecting only to the finding that he did not "initiate contact with a Counselor within

45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45

days of the effective date of the action," as required by 29 C.F.R. § 1614.105(a)(1).  Dkt. No. 47.

Defendants filed a response to Plaintiff's objections on September 9, 2021.  Dkt. No. 48.

## LEGAL STANDARD

### I.    Standard for Review of a Report and Recommendation

When reviewing a report and recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C).  When a party raises an objection to a report and recommendation, "the

court is required to conduct a de novo review of the contested sections."  *Pizarro v. Bartlett*, 776

F. Supp. 815, 817 (S.D.N.Y. 1991).  However, when a party does not raise an objection, the

"court may adopt those portions of a report and recommendation to which no timely objections

have been made, provided no clear error is apparent from the face of the record."  *DiPilato v. 7-*

*Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citing Fed. R. Civ. P. 72 advisory committee's note (b)).

## II.      Standard for Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Infinitives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

The Court has reviewed the portions of the Report and Recommendation as to which no timely objections have been made and finds no facial error in its conclusions that: (1) Plaintiff's hostile work environment claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiff's allegations do not plead the objective severity or pervasiveness necessary and because Plaintiff has not alleged that the conduct was

caused by his membership in a protected class; (2) Plaintiff's FTCA claim should be dismissed

under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction; and (3)

Plaintiff's NYSHRL claims should be dismissed because they are deemed abandoned as they are

not addressed in Plaintiff's response to Defendants' motion to dismiss.  Judge Freeman's

recommendations are persuasive and comprehensive, and the Court adopts them here.

Plaintiff has timely objected to the Report and Recommendation's holding that he did not

"initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory or, in

the case of personnel action, within 45 days of the effective date of the action," as required by 29

C.F.R. § 1614.105(a)(1), and its recommendation that his Title VII non-selection claims be

dismissed for this reason.  As such, the Court reviews the motion to dismiss these claims de

novo.

## I.       Plaintiff's Title VII Non-Selection Claims

Defendants move to dismiss Plaintiff's Title VII non-selection claims for failure to timely

file a complaint before the EEOC.  "Title VII requires a plaintiff to exhaust administrative

remedies before filing suit in federal court."  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384

(2d Cir. 2015).  "Timely exhaustion of administrative remedies requires that a federal employee

comply with applicable EEOC regulations."  *Lucenti v. Potter*, 432 F. Supp. 2d 347, 356

(S.D.N.Y. 2006).  The applicable federal regulation here is 29 C.F.R. § 1614.105(a), which

states:

> (a) Aggrieved persons who believe they have been discriminated against on the
> basis of race, color, religion, sex, national origin, age, disability, or genetic
> information must consult a Counselor prior to filing a complaint in order to try to
> informally resolve the matter.
>
>> (1) An aggrieved person must initiate contact with a Counselor within 45
>> days of the date of the matter alleged to be discriminatory or, in the case of
>> personnel action, within 45 days of the effective date of the action.

> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter of personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

Defendants argue, and the Magistrate Judge concluded, based on Plaintiff's EEOC complaint, that he was aware of his non-selection as of December 6, 2018, the date Plaintiff stated in that EEOC complaint that "it was brought to [his] attention that [Ping] was selected as R2 MSB Chief." *See* Dkt. No. 30 at 8-9; Dkt. No. 45 at 22 (citing Dkt. No. 31-4).  Relying on the same EEOC complaint, the Magistrate Judge stated Plaintiff first contacted an EEOC Counselor on February 7, 2019—"63 days after he learned of his non-selection."  Dkt. No. 45 at 23.  The Magistrate Judge concluded that the 45-day period expired before Plaintiff contacted the Counselor, because Plaintiff knew that he was not selected for the Position for over 45 days before he contacted the Counselor.  The Magistrate Judge rejected Plaintiff's position that the 45 days did not begin to run until the "effective date" of Ping's assumption of the Position—which Plaintiff asserts was February 3, 2019—and that Plaintiff did not know of the effective date until it was announced to the staff at some later point in February 2019.  *Id.* at 24.  The Magistrate Judge did note, however, that Plaintiff's position finds some support in the case law, and that there is a division of authority on this question.  *Id.*  Plaintiff asserted that in December 2019 he heard only a rumor about the selection decision.  *Id.*

The Magistrate Judge's conclusion was based on two propositions of law.  First, the court held that on a motion to dismiss it could take judicial notice of the contents of Plaintiff's EEOC complaint, even though the EEOC complaint was not attached to the complaint and its contends

were not referred to in it.[1]  The Magistrate Judge reasoned, "a court may specifically take judicial

notice of public records of the EEOC . . . , including a plaintiff's EEOC charge and the facts set

forth therein."  *Id.* at 23 (citing *Holmes v. Fresh Direct*, 2015 WL 4885216, at *4 (E.D.N.Y.

Aug. 5, 2015); *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 597 n.8

(S.D.N.Y. 2017) (finding it proper to take judicial notice of an EEOC complaint on a motion to

dismiss, as a "plaintiff's EEOC charge is a public document filed in an administrative

proceeding"); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 (E.D.N.Y. 2013)

("[T]he [c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to dismiss.")).

Second, the court held that the "effective date of the action," within the meaning of Section

1614.105(a)(1) referred to "the date when the *plaintiff* was notified that he or she had *not* been

selected," rather than to "the date when another candidate . . . started in the position."  Dkt. No.

45 at 24.

    The Court reviews the question whether Plaintiff's Title VII non-selection claims should

be dismissed for failure to exhaust administrative remedies—and both of these underlying

propositions—de novo.

    A.    **Judicial Notice of the EEOC Complaint**

    First, the Court concludes that the Magistrate Judge erred in relying at the motion to

dismiss stage on the EEOC complaint for its contents and the truth of the statements contained in

it.  A court generally may consider documents that are not contained within the four corners of a

complaint under two different circumstances: (1) when a document is attached to the complaint

---

[1] The Second Amended Complaint refers to the EEOC complaint but only for its timing and not
for its contents.  *See* SAC ¶¶ 8-9 (stating that "[o]n or about March 5, 2018, Plaintiff timely filed
a charge of discrimination, hostile work environment, and harassment with the [EEOC]," that
180 days have passed since Plaintiff filed this charge, and that "[o]n or about February 10, 2019,
Plaintiff timely filed a second charge of discrimination with the EEOC").

or necessarily incorporated into it by reference, *see Bongiorno v. Baquet*, 2021 WL 4311169, at

*10 (S.D.N.Y. Sept. 10, 2021); and (2) when judicial notice may be taken pursuant to Federal

Rule of Civil Procedure 201, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991);

*Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382 (S.D.N.Y. 2020).

      Defendant may not rely upon the doctrine of incorporation by reference here for the

contents of the EEOC complaint.  Administrative exhaustion is an affirmative defense, and "the

burden of pleading and proving Title VII exhaustion lies with defendants."  *Hardaway v.

Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  Thus, the documents that

would establish exhaustion, or contrary-wise would disprove it, need not be attached to the

complaint or incorporated by reference.  Plaintiff was required only to plead a "short and plain

statement of the claim" and not to anticipate a response to a potential affirmative defense.  *Jones

v. Bock*, 549 U.S. 199, 212 (2007).  Defendant thus may not avail itself of the doctrine that

permits "an affirmative defense [to] be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint," or is omitted by artful pleading.  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.

2004) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *see also

Jones v. Bock*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the

basis for dismissal for failure to state a claim depends on whether the allegations in the complaint

suffice to establish that ground, not on the nature of the ground in the abstract.").

      Defendant also may not take advantage of Federal Rule of Evidence 201 which allows

the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1)

is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201.  The court may take judicial notice of the fact of public records, such as prior

adjudications or other publicly available information pursuant to that rule.  *See Johnson v. Pugh*,

2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of matters

of public record, including pleadings, testimony, and decisions in prior state court adjudications,

on a motion pursuant to Rule 12(b)(6)."); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8

(2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices.").

In that circumstance, these records are received on the motion not for the truth of the assertions

they contain, but instead and solely for the fact that the filings were made and when they were

made.  *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)

("A court may take judicial notice of a document filed in another court not for the truth of the

matters asserted in the other litigation, but rather to establish the fact of such litigation and

related filings.") (internal quotation marks omitted).

 Defendants offer Plaintiff's EEOC complaint, not for the fact of its filing or for its timing

but for its contents.  They asked the Magistrate Judge to refer to the content of Bamba's EEOC

complaint as the basis for the date on which Bamba learned of his non-selection and for the

Judge's factual determination that "Bamba did not initiate counseling within 45 days of learning

of his non-selection."  They argued that Bamba's request for counseling was not timely initiated

because he "himself alleges in his EEOC complaint that he learned on December 6, 2018 that

Ping had been selected to the position of Region 2 Mission Support Chief and that he believed he

was more qualified than Ping."  Dkt. No. 30 at 8-9.  Plaintiff's statement is in the nature of an

evidentiary admission.  *See Weiss v. Union Cent. Life Ins. Co.*, 28 F. App'x 87, 89 (2d Cir. 2002)

(holding that a statement made prior to commencement of litigation is not judicial admission);

*Kelly v. Provident Life and Accident Ins. Co.*, 695 F. Supp. 2d 149, 154 (D. Vt. 2010) (citing

*Weiss* for the same proposition); *see also In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (holding that a judicial admission is "a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding" and which "must not only be a formal statement of fact but must also be intentional, clear, and unambiguous"); *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (discussing difference between evidentiary admission and judicial admission). Based on the content of the EEOC complaint, Defendants argue that "Bamba failed to exhaust his administrative remedies with respect to his non-selection claims," and that "the Court should dismiss Bamba's non-selection claims pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 9.

The Magistrate Judge's reliance on the EEOC complaint for its content was error. Although the Court had the authority to take notice of the EEOC complaint for its existence and its timing, that authority did not reach to taking notice of it for its content, much less as a binding admission. The cases relied upon by Defendants to argue that the Court may take judicial notice of the EEOC complaint either consider documents that are referenced in the complaint, or take judicial notice for the purpose of establishing whether adequate notice was provided to the EEOC of the conduct alleged to be discriminatory or to show what date the claim was signed, but not for the truth of the assertions therein. *See Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 461 (S.D.N.Y. 2011) (noting that "the Court may also take judicial notice of . . . Plaintiff's EEOC Complaint dated October 5, 2007," but not relying on any assertions therein); *Lang v. N.Y.C. Health & Hosps. Corp.*, 2013 WL 4774751, at *2 (S.D.N.Y. Sept. 5, 2013) (taking judicial notice of plaintiff's EEOC complaint but considering it only for whether plaintiff raised his discrimination claim in that complaint); *Hanley v. Chi. Title Ins. Co.*, 2013 WL 3192174, at

*3 (S.D.N.Y. June 24, 2013) (considering plaintiff's EEOC record to establish whether plaintiff could bring suit against individuals not named therein, including considering who was named therein and the fact that plaintiff referenced the unnamed individuals in the body of her affidavit); *Marshall v. Nat'l Assoc. of Letter Carriers Br. 36*, 2003 WL 223563, at *8 n.3 (S.D.N.Y. Feb. 3, 2003) ("While Plaintiff attaches the EEOC Denial of Request for Reconsideration to this pleading, he does not attach other EEO documents, such as the Precomplaint Counseling Form, the EEO Complaint, the agency's Final Decision or the EEOC decision.  The Court may nonetheless consider these on a motion to dismiss . . . as they are implicitly referenced in and integral to the Complaint."); *Frigerio v. United States*, 2011 WL 3163330, at *6 (S.D.N.Y. July 22, 2011) (noting that "[a]llegations made within the complaint that 'are contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness," quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), which goes on to make it clear that this refers to allegations made within the complaint that are contradicted by more specific allegations "of the complaint" or documentary evidence "from the exhibits attached thereto," *not* allegations and documentary evidence contained only in documents of which the court takes judicial notice and not contained in, incorporated in, or referenced in the complaint).

Accordingly, the Court does not take judicial notice of the EEOC complaint and does not rely on the truth of the statement therein that Bamba learned of Ping's promotion and his non-selection on December 6, 2018 in considering this motion to dismiss.  The affirmative defense of administrative exhaustion does not appear on the face of Plaintiff's complaint and is therefore not suitable for resolution under Rule 12(b)(6).

B.    "Effective Date" of the Personnel Action

Second, even if the EEOC complaint were cognizable for its contents without converting Defendant's motion to one for summary judgment, the Magistrate Judge relied on the wrong standard for determining whether the request for an EEOC Counselor was timely initiated.  The Magistrate Judge relied on the date when Plaintiff heard that he would not be selected for the position rather than the "effective date" of the personnel action.  That was error.

Section 1614.105(a)(1) states: "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  Defendants argue that "[t]he 45-day time period begins to run from when a plaintiff receives notice of the non-selection," and that the relevant date is therefore December 6, 2018, when Plaintiff "learned . . . that Ping had been selected to the position."  Dkt. No. 30 at 8.  For his part, Plaintiff argues that the 45-day time period begins to run from "the effective date of the discriminatory action," rather than "the date the Plaintiff was informed of the action," and that the relevant date is therefore February 3, 2019, "which is the day [Ping] assumed the position as Mission Support Chief."  Dkt. No. 34 at 11.

The Magistrate Judge and the parties have cited the cases that address when the time period begins to run for initiation of contact in cases challenging federal personnel decisions. These cases adopt various different dates to begin the 45-day time period, without analysis as to why the dates are appropriate under the regulation and in most cases without addressing the interpretive question of what the language "effective date" means in the regulation.  *See, e.g.*, *Beene v. Delaney*, 70 F. App'x 486, 490 (10th Cir. 2003) (holding that 45-day period began to run from date when plaintiff was told by the Acting Chief of her division that "she was not eligible for one of the promotions"); *Winder v. Postmaster Gen. of the U.S.*, 528 F. App'x 253,

255 (3rd Cir. 2013) (finding that 45-day period commenced on the date when plaintiff "was informed that she would not be selected," but relying only on cases that address the discovery rule regarding statutes of limitations generally and not on cases about 1614.105(a)(1)); *Gelin v. Snow*, 2005 WL 2456742, at *8 (S.D.N.Y. Sept. 30, 2005) (considering 45-day period to run from date that plaintiff "knew . . . that he had not been selected for the . . . promotions to which he had applied"); *Cannon v. Colvin*, 2017 WL 3834935, at *2 (W.D.N.Y. July 21, 2017) (stating that 45 days ran from the date plaintiff received an email "advising him that he was ineligible for the . . . position" without addressing language of regulation), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 140999 (Aug. 30, 2017); *Hogan v. Mabus*, 2015 WL 3970808, at *4-5 (D. Conn. June 30, 2015) (stating without analysis that time ran from date plaintiff had notice of his allegedly discrimination non-selection); *Lanham v. Shinseki*, 662 F. Supp. 2d 238, 240, 242 (D. Conn. 2009) (parties agreed that the date plaintiff was informed that he was not selected for a position and that another candidate was selected was the "effective date").

The Second Circuit has not spoken to the issue.  Although the court in *Hogan v. Mabus*, 2015 WL 3970808, at *4-5 (D. Conn. June 30, 2015) cited *Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 1985) for the proposition that "the limitations period begins to run when the plaintiff receives notice of the adverse action," that case did not involve Section 1614.105(a)(1) and thus did not require the court to interpret the language regarding the "effective date of the action." Rather, it interpreted 42 U.S.C. § 2000e-5 which requires a Title VII employment discrimination claim to be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  Tellingly, the regulation at issue here uses dramatically different language—it refers to the "the effective date of the action."

The Fourth Circuit considered how to interpret Section 1614.105(a)(1)—and the relevant regulatory language regarding "effective date"—in *Jakubiak v. Perry*, 101 F.3d 23 (4th Cir. 1996). There, the plaintiff argued that the 45-day period should run from "the date of the last discriminatory act," which was the date on which he was "officially notified that 'another candidate was selected to fill the position.'" *Id.* at 26. The Fourth Circuit rejected this argument, emphasizing that "[t]o determine when the 45-day time period begins, 29 C.F.R. § 1614.105(a)(1) expressly distinguishes cases involving personnel actions from other cases involving allegations of discrimination," and that "the regulation explicitly provides that the 45-day clock runs from the 'effective date of the action.'" *Id.* at 26-27. The court reasoned that the personnel action plaintiff complained about was another candidate's appointment to a position that he had applied for, and that the 45-day period therefore began on the date that the "Notification of Personnel Action[] officially installed" the other candidate. *Id.* at 27.

A line of cases in the D.C. district court reach the same conclusion. In *Felder v. Johanns* the court determined that under Section 1614.105(a)(1), "the pertinent date for determining the timeliness of [plaintiff's] EEO contact is . . . the effective date of the personnel action challenged, and *not* the date on which [plaintiff] became aware of what that personnel action would be." 595 F. Supp. 2d 46, 62 (D.D.C. 2009). As in *Jakubiak*, the court focused on the "plain language of the regulations indicat[ing] [that] the 45-day filing period begins to run from the effective date of the [personnel] action not from notice of that action." *Id.* (quoting *James v. England*, 332 F. Supp. 2d 239, 345-46 (D.D.C. 2004)); *see also Scarborough v. Natsios*, 190 F. Supp. 2d 5, 15-16 (D.D.C. 2002) (same).

The Court interprets a federal regulation using "all the 'traditional tools' of construction." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467

U.S. 837, 843 (1984)).  These include "the text, structure, history, and purpose of a regulation."  *Id.*; *see also Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) ("We begin our interpretation of the regulation with its text . . . ."); *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 232 (2d Cir. 2020); *Brody v. Island Fed. Credit Union*, 2020 WL 2476007, at *5 (S.D.N.Y. May 13, 2020).  The interpretation must be faithful to the plain language of the provision and attempt to give meaning to each word in the regulation.  "When interpreting a . . . regulation, the Court's 'job is to interpret the words consistent with their ordinary meaning.'"  *Kisor*, 139 S. Ct. at 2415 (quoting *Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018)); *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 117 (2d Cir. 2005) ("[T]he plain meaning of language in a regulation governs unless that meaning would lead to absurd results." (quoting *Reno v. Nat'l Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir. 1995))); *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 584 (2d Cir. 2006) ("We begin our analysis of the statute and regulations with the plain meaning of the language used.").  The Court may also consult the Federal Register.  *Kisor*, 139 S. Ct. at 2416.

The plain language of the regulation supports Plaintiff's interpretation.  Section 1614.105(a)(1) refers in the disjunctive to two different start times for an aggrieved employee to contact a Counselor depending on which of two different types of employee action is applicable.  In the case of personnel action, the Counselor must be contacted "within 45 days of the effective date of the action."  In all other cases, the Counselor must be contacted "within 45 days of the date of the matter alleged to be discriminatory."  Reviewing the language as a whole, each of those respective terms must be given its own independent meaning.  In addition, each must be construed according to its plain language, giving the words their ordinary meaning.  *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) (noting, when interpreting

a regulation, that "we have cautioned against reading a text in a way that makes part of it redundant"). The "date of the matter alleged to be discriminatory" is understood to be the date when a cause of action for that discrimination would accrue under ordinary statute of limitations rules. *See Green*, 136 S. Ct. at 1775-76 (applying the "'standard rule' for limitations periods" and holding that the "matter alleged to be discriminatory" includes the date of resignation for a constructive-discharge claim, because that is when the cause of action becomes complete and present). The "effective date" of the personnel action must mean something different—while, depending on the facts the effective date may also be the date on which the matter alleged to be discriminatory occurred, it is not necessarily that date. Giving the language its ordinary meaning, the regulation refers to the date on which the personnel action being challenged became "effective" according to the agency's rules.

The language "effective date" is a term of art that has a defined meaning in federal employment. According to the federal government's official employment site, the "effective date" of a personnel action is "[t]he date on which a personnel action takes place and on which the employee's official assignment begins." *Glossary*, USA Jobs, http://www.usajobs.gov/Help/glossary (last visited Sept. 30, 2021). The United States Office of Personnel Management has extensive guidelines regarding setting "effective dates" of personnel actions. *See* U.S. Office of Personnel Management, *Guide to Processing Personnel Actions*, Ch. 3:1-3, tbls. 3-A & 3-B (2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/#url=Processing-Personnel-Actions. For example, these guidelines establish that "no personnel action can be made effective prior to the date on which the appointing officer approved the action," which entails signing a Standard Form and "certif[ying] that the action meets all legal and regulatory requirements and, in the case of

appointments and position change actions, that the position to which the employee is being assigned has been established and properly classified," *id.* Ch. 3:1-3(a), and that for a resignation, the effective date is "[t]he date set by the employee," and "[u]nless the employee specifies otherwise, a resignation is effective at midnight," *id.* tbl. 3-B.

Indeed, federal regulations explicitly distinguish between the date of any notice of and the effective date of a personnel action. *See, e.g.*, 5 C.F.R. § 752.604(g)(2) (mandating the agency must provide notice to an appointee of a decision regarding removal on or before the effective date of the action); 5 C.F.R. § 315.804 (requiring the agency to provide written notice of the reasons for and the effective date of termination to a probationary employee). The Supreme Court has similarly recognized the distinction. *See Green*, 136 S. Ct. at 1782 (holding that "a constructive-discharge claim accrues . . . when the employee gives notice of his resignation, not on the *effective date* of that resignation"). The term "effective date" as used in Section 1614.105(a)(1) refers to a specific date in context of each federal personnel action: It refers to the officially-set "effective date" of that personnel action, when the action becomes official according to the agency's rules.

The regulatory history is inconsistent with Defendant's argument. The original language for the rule that became Section 1614.105(a) included a clause that would trigger the time limit for initiating a counseling session regarding a personnel action from "the date that the aggrieved person knew or reasonably should have known of the matter or personnel action alleged to be discriminatory," in addition to the clause stating that the time limit is triggered by "the effective date of the action." 54 Fed. Reg. 45747, 45753 (October 31, 1989). It thus would have supported Defendant's argument and the Magistrate Judge's decision. In the final promulgated rule, however, the "knew or reasonably should have known" clause was removed,

leaving only "in the case of personnel action, within 45 days of the effective date of the action." 57 Fed. Reg. 12634, 12648 (April 10, 1992).  The clause was instead moved to (a)(2), and applied only in the negative to complainants attempting to extend the deadline because they "did not know and reasonably should not have known that the discriminatory matter of personnel action occurred."  *Id.*  This history demonstrates that the EEOC considered including notice as a trigger for the 45-day time period for personnel actions but deliberately excluded that in the final rule.  *Cf. Reyes v. City of New York*, 2000 WL 1505983, at *2 (S.D.N.Y. Oct. 6, 2000) (drawing this inference in the legislative history context).  The final rule, published at 57 Fed. Reg. 12634 (1992) does not set forth an explanation for the revision.  However, it would undermine the EEOC's decision for the Court through judicial interpretation to include as a triggering event for the initiation of contact a date that the regulators chose to exclude.

The interpretation makes sense of the regulatory language and its purpose.  The EEOC no doubt recognized the value of setting a bright line date, easily measured, as the trigger for the time period by which contact must be initiated.  Easily measured bright lines breed certainty and lower litigation costs.  *See, e.g.*, *Cutrone v. Mortg. Elec. Reg. Sys., Inc.*, 749 F.3d 137 (2d Cir. 2014) (adopting a "bright line rule" and quoting the Eighth Circuit's reasoning that "this rule promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know" (quoting *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (per curiam))).  The EEOC's choice of the "effective date" to measure the date by which contact must be initiated serves other salutary purposes.  It permits the agency to make and make effective its employment decision free from the necessary intervention of a Counselor.  It also relieves the aggrieved employee of the need to initiate contact until the date certain when the

20

personnel action of which he or she complains has become effective and is no longer subject to revision.

Thus, the plain meaning of the clause at issue and the meaning of the phrase "effective date" in federal employment, the broader structure of the regulation, and the regulatory history all support a single conclusion:  Under §1614.105(a)(1), the "effective date" of a personnel action—from which the 45-day clock runs—is the officially-set date on which the challenged personnel action took effect, not the date on which the plaintiff was on notice that the challenged personnel action would occur.[2]  For this reason, even if the Court did consider Plaintiff's EEOC Complaint, Defendants' motion to dismiss for failure to exhaust would still be without merit.

## CONCLUSION

Having reviewed the portions of the Report and Recommendation as to which no timely objections have been made for clear error, and the portions of the Report and Recommendation as to which Plaintiff objected de novo, the Court hereby ADOPTS the Report and Recommendation as to its conclusions that: (1) Plaintiff's hostile work environment claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiff's allegations do not plead the objective severity or pervasiveness necessary and because Plaintiff has not alleged that the conduct was caused by his membership in a protected class; (2) Plaintiff's FTCA claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction; and (3) Plaintiff's NYSHRL claims should be

---

[2] The Court recognizes that the regulatory language creates a seeming anomaly.  It is possible that the statute of limitations will start to run before the date that triggers the employee's obligation to initiate contact.  The anomaly is more seeming than real.  An employee concerned about the potential running of the statute of limitations always can contact an EEOC Counselor as soon as he hears about a personnel action and upon the occurrence of the act alleged to be discriminatory even if that date is prior to the effective date of that action.  The plain language of Section 1614.105(a)(1) simply relieves him or her from the obligation to do so.

dismissed because they are deemed abandoned as they are not addressed in Plaintiff's response to Defendants' motion to dismiss.  The Court further adopts the Magistrate Judge's recommendation that Plaintiff be given leave to replead only his Title VII hostile work environment claims.  Plaintiff shall have thirty (30) days from the filing of this Order to file an amended complaint with additional factual allegations supporting his Title VII hostile work environment claims.  If Plaintiff makes no such amendment, those claims will be deemed dismissed with prejudice.

The Court does not adopt the recommendation to which Plaintiff objected—that the Court dismiss Plaintiff's Title VII non-selection claims for failure to timely file a complaint before the EEOC—and denies Defendants' motion to dismiss as to that claim.

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 29.


SO ORDERED.

Dated: September 30, 2021
       New York, New York                              _____
                                                            LEWIS J. LIMAN
                                                       United States District Judge